UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARLAN BRODER,

    Plaintiff,                                 Civil Action No. 10-15162

v.                                              HON. NANCY G. EDMUNDS
                                                 U.S. District Judge
                                                 HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Arlan Broder brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for disability insurance benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #13] be GRANTED and Plaintiff's Motion for Summary Judgment [Doc. #12] DENIED.

## PROCEDURAL HISTORY

On December 2, 2008, Plaintiff filed an application for DIB, alleging an onset date of July 1, 2003 (Tr. 115). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on August 31, 2009 in San Francisco, California before Administrative Law Judge (ALJ) Charles D. Reite (Tr. 6). Plaintiff, unrepresented by counsel, testified by teleconference (Tr. 13-40). Vocational Expert ("VE") Joel Greenberg also testified (Tr. 40-52). On September 29, 2009, ALJ Reite found Plaintiff not disabled

-1-

(Tr. 88). On November 24, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on December 29, 2010.

## BACKGROUND FACTS

Plaintiff, born March 14, 1953, was age 56 when the ALJ issued his decision (Tr. 88, 115). He completed more than four years of college and worked previously as a cable technician (Tr. 133, 136). His application for DIB alleges that he is unable to work as a result of mental disability creating "problem[s] interacting with people" (Tr. 132).

### A. Plaintiff's Testimony

Plaintiff began his testimony by stating that he stood 5' 7" and weighed 190 pounds (Tr. 15-16). Plaintiff, divorced, reported that he held several Master's degrees (Tr. 16). In addition to his work as a cable technician, he indicated that he worked briefly for two therapy clinics (Tr. 17, 20). Plaintiff stated that his work as a technician entailed installing cable components and "troubleshooting" cable and internet issues (Tr. 22).

Plaintiff stated that he was terminated by the cable company in 2003 for trying to start a union (Tr. 22-23). He reported that before his stint at the cable company, he was employed at a scrap yard as a crane operator and supervisor by his uncle, adding that he also held a number of low-paying jobs, including that of a "rough carpenter" (Tr. 23-27). Citing the findings of a consultive psychiatric examiner, Plaintiff opined that he had a "avoidant personality disorder" and did not possess the social skills to acquire long-term work (Tr. 32).

### 1. Treating Sources

A March, 2004 stress test was unremarkable (Tr. 293). August, 2005 physical exam notes states that Plaintiff was "in quite good health" (Tr. 296). He exhibited a normal mood and affect (Tr. 297). August, 2007 treating notes indicate that Plaintiff experienced left knee pain (Tr. 224). In November, 2007, Plaintiff reported kidney stones and flank pain (Tr. 292).

A CT of the abdomen showed some degenerative changes but was otherwise normal (Tr. 210, 215). Tests for kidney function were in the normal range (Tr. 212).

### 2. Consultive and Non-Examining Sources

In January, 2009, Saul Forman, M.D. performed a psychiatric examination of Plaintiff on behalf of the SSA (Tr. 298-303). Plaintiff reported a number of short-term, unsuccessful job attempts (Tr. 298). He described himself as shy (Tr. 298). Plaintiff stated that he spent time watching television each day (Tr. 299). He denied drinking or the use of illicit drugs (Tr. 300).

Dr. Forman found Plaintiff's behavior appropriate with good hygiene and good contact with reality (Tr. 301). Plaintiff described his depression as "situational" (Tr. 301). Dr. Forman concluded that "[w]ere it not for his personality dysfunction," Plaintiff "could work" (Tr. 302-303). He assigned Plaintiff a GAF of 41-50 with a "poor" prognosis[1] (Tr. 303).

Later the same month, a Mental Residual Functional Capacity Assessment found that Plaintiff was not significantly limited in understanding or concentrational abilities, but experienced moderate limitations in the ability to accept instruction and get along with coworkers (Tr. 305). He was deemed capable of unskilled work involving "only superficial contact with supervisors and co-workers and only incidental contact with the general public" (Tr. 306). The same month, a Psychiatric Review Technique found insufficient evidence of a mental impairment (Tr. 308).

### C.  Vocational Expert Testimony

---

[1] A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 ( *DSM–IV–TR* ) (4th ed.2000).

VE Joe Greenberg classified Plaintiff's previous work as a cable television line technician (as performed) as exertionally light to medium and skilled; sales representative of heavy equipment, light/skilled; stock supervisor, light/skilled; and car salesman, light/skilled[2] (Tr. 41-42). The VE testified that an individual with Plaintiff's age, education, and work background with mild concentrational deficiencies and limited to exertionally medium work could perform Plaintiff's past relevant jobs as a sales representative of heavy equipment, car salesman, and stock supervisor (Tr. 44-45). The VE stated further that if the same individual experienced mild social limitations, the above job findings would be unaffected (Tr. 45). He testified that if the same individual possessed *moderate* rather than mild social limitations, all of past work would be precluded (Tr. 46), but he could perform the work of a small product assembler (33,000 positions in the State of Michigan), and hand packager ( 25,000) (Tr. 46-47). The VE stated that if the same individual experienced marked impairment in social interaction, all of the above jobs would be unavailable (Tr. 47).

In response to questioning by Plaintiff, the VE testified that a car salesman who only sold one car in six months would be terminated from employment (Tr. 47). He testified further that an individual unable to follow directions from supervisors would be precluded from the jobs of small assembler and hand packager (Tr. 49). Plaintiff stated that he believed the VE's testimony had "little if no probative value" to the assessment of his own limitations (Tr. 55).

---

[2]
20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

### D. The ALJ's Decision

Citing the consultive and treating records, the ALJ determined that Plaintiff experienced the severe impairments of "affective disorder and avoidant personality disorder," finding however that neither impairment met or medically equaled an impairment found in Appendix 1, Subpart P, Regulation no. 4 (Tr. 82-83).

The ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> [M]edium work . . . except he has a mild, ten percent deficit in concentration, persistence and pace and a moderate, ten to twenty percent deficit in social functioning.

(Tr. 83). Citing the VE's job findings, *see above,* the ALJ found that while Plaintiff was unable to perform any of his former jobs, he could perform the work of a small products assembler and hand packager (Tr. 87).

The ALJ discounted allegations of disability by noting that Plaintiff had not sought mental health treatment in the past 10 years (Tr. 85). The ALJ observed that Plaintiff continued to drive, live independently, play the guitar, and care for his grandchild occasionally (Tr. 85).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Disability at Step Three

Plaintiff, proceeding *pro se,* argues that his affective and personality disorders mandate a disability finding under the listings at Step Three. *Plaintiff's Brief* at 5. He contends, in effect, that the ALJ erred by failing to adopt the Dr. Forman's consultive examination findings. *Id.* at 3.

> Listing 20 C.F.R. part 404, Subpart P, Appendix 1, 12.04 states in pertinent part:
>
> *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

Under the "'A' Criteria," a claimant must show "[m]edically documented persistence, either continuous or intermittent, of one of the following:

> 1. Depressive syndrome characterized by at least four of the following:
>
> a. Anhedonia or pervasive loss of interest in almost all activities; or
>
> b. Appetite disturbance with change in weight or
>
> c. Sleep disturbance; or
>
> d. Psychomotor agitation or retardation; or
>
> e. Decreased energy; or
>
> f. Feelings of guilt or worthlessness; or
>
> g. Difficulty concentrating or thinking; or

    h. Thoughts of suicide; or

    i. Hallucinations, delusions or paranoid thinking.

Under Listing 12.04, a claimant must also show (under the "'B' Criteria") that the condition results in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

    or

    Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)

*or* under the " 'C' Criteria:"

    'repeated episodes of compensation,' [or]a disease process in which "even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or "a current history of 1 or more years' inability to function outside a highly supportive living arrangement ..."

To meet the Listing 12.08, "*Personality Disorders*" a claimant must show one of thefollowing under the A Criteria:

    inflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress,

>    evidenced by at least one of the following:
>
>    1. Seclusiveness or autistic thinking
>
>    2. Pathologically inappropriate suspiciousness or hostility
>
>    3. Oddities of though, perception, speech and behavior
>
>    4. Persistent disturbances of mood or affect
>
>    5. Pathological dependence, passibity, or aggressivity
>
>    6. Intense and unstable interpersonal relationships and impulsive and damaging behavior"

*and* two of the B Criteria. *See* Listing 12.04, *above. See also Nelson v. Commissioner of Social Security,* 2006 WL 2472910, *7 (6th Cir.2006)(While Listing 12.04 is met by a combination of the A and B Criteria, or A and C Criteria, Listing 12.08 must meet the A and B Criteria).

The ALJ's finding that Plaintiff did not experience two "marked" limitations under the "B Criteria" is well supported and well explained. The ALJ supported his conclusion that Plaintiff did not experience *any* impairment in activities of daily living by noting that he grocery shopped, performed household chores without limitation, played the guitar, and performed self-care tasks without difficulty (Tr. 83, 85). Likewise, the ALJ reasonably found that Plaintiff had moderate (rather than marked) limitations in social functioning, noting that he had an ongoing relationship with his children and cared for his grandson occasionally (Tr. 83, 85). The ALJ supported his conclusion that Plaintiff's concentrational abilities were only mildly impaired by pointing out that Plaintiff was able to follow verbal and written

instructions, "try his hand" at a new software program, and compose a 14-page brief on behalf of his disability claim [3] (Tr. 83, 85). The ALJ correctly noted that the record included no evidence of "episodes of decompensation" under the "C Criteria" (Tr. 83).

Further, the ALJ's partial rejection of Dr. Forman's findings does not provide grounds for reversal. Although Dr. Forman gave Plaintiff a "poor" prognosis, the ALJ rejected the finding of "serious functional impairments," noting that the findings were based on a one-time consultive examination and unsupported by treating records (Tr. 85, 303). The ALJ observed that despite allegations of disability as a result of his mental condition, Plaintiff had not sought psychological or psychiatric treatment in the past ten years (Tr. 85). Citing SSR 96-5p, the ALJ also noted that "a finding of disability is a finding reserved for the Commissioner" (Tr. 85). The ALJ's finding that Plaintiff's condition was not disabling is also supported by medical records showing that he exhibited an appropriate mood and affect in interacting with treating sources (Tr. 297).

In closing, it should be noted that my recommendation to uphold the administrative determination should not be read to trivialize Plaintiff's legitimate psychological problems. Nonetheless, the ALJ's finding that he was not disabled was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and accordingly, should not be disturbed by this Court. *Mullen v. Bowen*, *supra.*

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #13] be GRANTED and that Plaintiff's Motion for Summary Judgment

---

[3] The finding that of mild (rather than moderate or marked) concentrational deficiencies is also supported Plaintiff's cogent and lengthy objections to the VE's job findings at the administrative hearing (Tr. 47-55).

[Doc. #12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: January 24, 2012

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 24, 2012.

s/Johnetta M. Curry-Williams
Case Manager